FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 30, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DARYL T. BROOKS JR., | No. 2:24-CV-00029-MKD |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT, AND DENYING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE |
| v. | |
| WASHINGTON STATE DSHS; GARFIELD COUNTY WASHINGTON SHERIFF'S DEPARTMENT; LAKE OF THE WOODS COUNTY MINNESOTA CPS AGENCY DIRECTOR AMY BALLARD, in her personal capacity, | **ECF Nos. 13, 17, 18** |
| Defendants. | |

Before the Court is Defendant Garfield County Sheriff's Department's Motion to Dismiss, ECF No. 13, Plaintiff's Request for Judicial Notice in Support of Opposition to Defendant's Motion to Dismiss, ECF No.17, and Plaintiff's Motion for Leave to Amend Complaint, ECF No. 18. The Court has reviewed the record and is fully informed. For the reasons set forth below, the Court grants

ORDER - 1

Defendant's Motion to Dismiss, denies Plaintiff's Request for Judicial Notice, and denies Plaintiff's Motion for Leave to Amend Complaint.

## BACKGROUND

**A. Procedural History**

On February 1, 2024, Plaintiff filed a *pro se* Complaint against Lake of the Woods, Minnesota Child Protective Services (CPS) Agency Director Amy Ballard[1], the Garfield County Washington Sheriff's Department (GCSO), and the Washington State Department of Health and Human Services (DSHS).  ECF No. 1. On April 4, 2024, GCSO filed a Motion to Dismiss under Rule 12(b)(6).  ECF No. 13.  Plaintiff filed a response in opposition of the Motion to Dismiss, ECF No. 16, a Request for Judicial Notice in support of his opposition to the Motion to Dismiss, ECF No. 17, and a Motion for Leave to Amend Complaint, ECF No. 18. Defendants Ballard and DSHS have also filed Motions to Dismiss, ECF Nos. 22, 24, which will be addressed in a separate Order.

**B. Summary of Allegations**

In his 56-page Complaint, Plaintiff alleges 54 claims for relief.  ECF No. 1. The allegations in the Complaint arise out of a series of CPS reports made by Plaintiff's ex-wife, Gina Heathcott, and other interactions with law enforcement

---

[1] Defendant Ballard is named in this suit in her personal capacity.  ECF No. 1 at 1.

ORDER - 2

and government officials that took place from 2006 through 2023. *Id.* at 7.[2]  Based

on this series of interactions, Plaintiff alleges that the defendants violated his First,

Second, Fourth, Fifth, and Fourteenth Amendment rights. *Id.* at 5.  He also alleges

intentional infliction of emotional distress, assault, reckless endangerment,

stalking, harassment, false reporting, official misconduct, unlawful conduct,

conspiracy, violations of the Americans with Disabilities Act (ADA), solicitation

to commit act of violence, discrimination, failure of duty, destruction of his parent-

child relationships, coercion, and intimidation. *Id.* at 5, 12-56.  Plaintiff seeks

$15,000,000 in damages, and declaratory relief. *Id.* at 52, 55.

   1.  *Incidents in 2004 to 2007*

   Plaintiff shares four children with Ms. Heathcott. *Id.* at 9.  From 2004

through 2006, Ms. Heathcott made reports to the Lake of the Woods County law

enforcement and CPS "to interfere with [P]laintiff's parenting time." *Id.*

Defendant Ballard was involved in the CPS investigation, and Plaintiff's children

were removed from Plaintiff from 2007 to 2009. *Id.* at 9, 16-17.  Plaintiff was not

_____

[2] The page numbers cited in this Order are the page numbers generated by the

Court's CM/ECF system, found in the top right corner of the documents.

Plaintiff's page numbering, found in the bottom right corner of the Complaint, is

different than the CM/ECF numbering.

ORDER - 3

allowed to communicate with his children except in limited situations, and after

Ms. Heathcott threatened to report Plaintiff for harassment, Plaintiff ceased contact

with his children.  *Id.* at 17-18.  Plaintiff's parenting plan was modified without

notice to Plaintiff.  *Id.* at 18.  Plaintiff alleges these incidents violated his Fourth

Amendment and Fourteenth Amendment rights and amounted to intentional

infliction of emotional distress.  *Id.* at 12-13, 19.

     In July or August 2006, Defendant Ballard informed Plaintiff that Ms.

Heathcott had attacked his eldest son, and Plaintiff needed to return to retrieve his

son.  *Id.* at 13.  Plaintiff was working as a truck driver, and he arrived to retrieve

his son two days after the call; he also sought an Order for Protection against Ms.

Heathcott and to remove his other children from Ms. Heathcott's home.  *Id.*

Defendant Ballard and the Chief of Police threatened Plaintiff that if he filed the

Order of Protection, Defendant Ballard would remove all of Plaintiff's children to

foster care.  *Id.*  Plaintiff was then served an Order for Protection, denying him

contact with his three younger children, which Plaintiff had to defend against in

court.  *Id.* at 14.  Plaintiff also contends this incident violated his Fourteenth

Amendment rights and amounted to intentional infliction of emotional distress.  *Id.*

at 14-15.

ORDER - 4

*2. Incidents in 2007*

In July 2007, Plaintiff was riding in a vehicle with his now wife, Heide Brooks. *Id.* at 20. A GCSO deputy shined a light into the windshield, and Plaintiff and his wife were "temporarily blinded" by the action. *Id.* at 21. The deputy stopped Plaintiff's vehicle and told Plaintiff that the view of his rear tag light was obstructed from full view. *Id.* Plaintiff left with a warning to repair the tag light, but Plaintiff states the light was working when Plaintiff returned home. *Id.* Plaintiff claims that this stop constituted reckless endangerment, assault, harassment, and a violation of his Fourth Amendment rights. *Id.* at 22.

In September 2007, Plaintiff's wife called GSCO for help with an altercation between Plaintiff's son and Ms. Brooks' son. *Id.* at 23. The deputy that responded to the call told Plaintiff that it was "silly" to call law enforcement regarding such a dispute, and Plaintiff "understood that the deputy was refusing to render services." *Id.* Plaintiff told the deputy to leave, and the deputy "protested the demand for his exit," but then left. *Id.* at 24. Plaintiff's wife later reported the deputy would "aggressively tailgate" her when he saw her around town. *Id.* Plaintiff claims that these interactions violated his First and Fourteenth Amendment rights and amounted to stalking and failure of duty by a public officer. *Id.* at 25.

ORDER - 5

### 3. Incidents in 2009 to 2011

Plaintiff's Complaint discusses a series of events that took place between 2009 and 2011. *Id.* at 25-27. It is unclear when in that date range the alleged violations of Plaintiff's rights occurred. Plaintiff states he was asked to pick up his two youngest children from Ms. Heathcott in April 2009. *Id.* His older children lived with Ms. Heathcott and her family until fall 2011. *Id.* Plaintiff was required to pay child support for all four children during an unclear period, and Ms. Heathcott did not return the court-ordered child support back to Plaintiff. *Id.* at 26-27. Plaintiff alleges these incidents amount to coercion, theft from a vulnerable adult, and intentional infliction of emotional distress. *Id.* at 27.

### 4. Incident in 2010

In 2010, Plaintiff's stepson and daughter were visiting the Pomeroy Church of the Nazarene and were accused of stealing by the church administration, and the children were separated from the other children and "held against their will." *Id.* at 27-28. Plaintiff and his wife were not notified of the accusations. *Id.* Plaintiff reported the incident to GSCO "so that the individuals involved could be arrested and prosecuted for the false imprisonment and the threatening of the two minor children." *Id.* at 28. A GCSO sheriff arrived, who was allegedly a member of the Church, and asked Plaintiff to meet with the Church leaders while the sheriff mediated the meeting. *Id.* Plaintiff claims that the sheriff's failure to take "legal

ORDER - 6

action" against the Church constitutes a violation of his Fourteenth amendment rights, and amounted to coercion, failure of duty by public officer, and official misconduct. *Id.* at 28-29.

### 5. Incidents in 2011

In October or November 2011, Garfield County Deputy Auditor Tina Keller reported that Plaintiff had an outburst and made threatening remarks against her, which Plaintiff denies. *Id.* at 30. A GSCO sheriff, who was also Tina Keller's husband, travelled to Plaintiff's home to confront him about the incident. *Id.* Plaintiff alleges that this constituted false reporting, official misconduct, conspiracy, intentional infliction of emotional distress, and denial of his First Amendment rights, among other things. *Id.* at 30-32.

In December 2011, Plaintiff and his wife were feeding his horse at the county fairground stalls. *Id.* at 32. A GCSO deputy requested identification and Plaintiff refused. *Id.* The deputy continued to request identification until Plaintiff's wife presented her identification and the encounter ended. *Id.* at 33. Plaintiff claims that this interaction constituted harassment, official misconduct, and a violation of his First and Fourteenth Amendment rights, among other things. *Id.* at 33-34.

ORDER - 7

6. *Incidents in 2012*

In June 2012, Plaintiff was vacating his rental unit. *Id.* at 35. All the parking spaces around the unit were illegally occupied by patrons of an annual car show. *Id.* A GCSO chief deputy arrived when Plaintiff had a verbal altercation with some of the patrons, to ensure that Plaintiff did not attempt to move the vehicles himself. *Id.* at 36. Plaintiff states a GCSO sheriff, who was off duty, shouted "I hate him!", referencing Plaintiff. *Id.* Plaintiff alleges that this incident constituted failure of duty by public officer, official misconduct, conspiracy, and a violation of his Fourth, Fifth, and Fourteenth Amendment rights. *Id.* at 36-38.

In March or April 2012, Plaintiff filed a motion for custody of his son in Garfield County Superior Court and was granted temporary sole custody. *Id.* at 38. Plaintiff alleges that his Ms. Heathcott harassed him about the motion for custody via calls and e-mails, but the GCSO failed to pursue the allegations. *Id.* at 39. Plaintiff alleges that Ms. Heathcott prompted two of Plaintiff's children to leave Plaintiff's residence and "make false and/or misleading accusations of abuse" to GCSO on two occasions. *Id.* Plaintiff alleges GCSO conspired with Ms. Heathcott to seize Plaintiff's children, and they kept the children's location secret from Plaintiff pending an abuse investigation. *Id.*

In July 2012, GCSO notified Spokane County CPS of the alleged abuse and CPS agent Heidi Pinkert arrived to investigate. *Id.* at 40. Plaintiff showed

ORDER - 8

Defendant Pinkert this disability ruling and a copy of the custody order, and was

told "none of these matter." *Id.* at 41. Plaintiff and his children were interviewed

by Ms. Pinkert and Plaintiff signed a protective action form "under the threat of

forceful removal of his children." *Id.* Plaintiff reported the "illegal actions" of the

individuals related to this incident to multiple people, but no actions have been

taken. *Id.* at 42-43.

Plaintiff also believes that his home remains under surveillance by the

GCSO and Washington State Patrol. *Id.* Plaintiff claims that this series of

incidents amount to harassment, conspiracy, coercion, destruction of parent-child

relationship, official misconduct, intentional infliction of emotional distress, and

intimidation, and constitutes a violation of his Fourth and Fourteenth Amendment

rights, among other things. *Id.* at 43-45.

*7. Incident in 2022*

On December 28, 2022, Plaintiff called county clerk Marie Gormsen, to ask

whether a tort form was necessary to sue the county. *Id.* at 46. Ms. Gormsen

informed Plaintiff she could not give legal advice. *Id.* Plaintiff responded to Ms.

Gormsen with "strong, clear, and determined language," and she asked Plaintiff to

stop yelling; Plaintiff stated he had PTSD and spoke in that manner all the time.

*Id.* at 47. Ms. Gormsen reportedly stated, "Wow, I am sure am glad I don't have to

talk to you everyday." *Id.* (as written). Plaintiff alleges this incident violated his

First Amendment rights and amounted to official misconduct, harassment, and disability discrimination. *Id.* at 47-48.

8. *Incident in 2023*

On January 6, 2023, Plaintiff contacted Sheriff Hyer regarding a reported theft on his property. *Id.* at 48. Plaintiff told Sheriff Hyer to trespass his neighbor if she did not remove her belongings from a disputed property. *Id.* Sheriff Hyer stated the "contract for deed that was registered at the courthouse" did not mean Plaintiff could possess the property, which Plaintiff contends "was a thinly veiled threat." *Id.* Plaintiff contends this incident amounted to unlawful conduct. *Id.* at 49.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss for failure to state a claim, the Court must accept as true the well-pleaded factual allegations and any reasonable inference to be drawn from them, but legal conclusions are not entitled to the same assumption of truth. *Id.* A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under

some viable legal theory. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 562 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. Although *pro se* pleadings are held to less stringent standards than those prepared by attorneys, *pro se* litigants in an ordinary civil case should not be treated more favorably than parties with attorneys of record. *See Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

A complaint may only be dismissed on statute of limitations grounds, pursuant to Rule 12(b)(6), if it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (internal citations omitted). The running of the statute of limitations must be apparent on the face of the complaint. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

## DISCUSSION

### A. Statute of Limitations

Defendant GSCO contends most of Plaintiff's claims are barred by the statute of limitations. ECF No. 13 at 8-9. Plaintiff filed the Complaint on February 1, 2024 and alleged the events that occurred between 2007 and 2023 violated numerous constitutional provisions, federal statutes, and state statutes. ECF No. 1 at 7.

ORDER - 11

1    *1.  State Law Causes of Action*

2        Defendant contends Plaintiff's state law claims are barred by the statute of

3    limitations.  *Id.*  In Washington, some intentional torts are subject to a two-year

4    statute of limitations, including assault.  RCW 4.16.100.  Other state law claims,

5    including intentional infliction of emotional distress, are subject to a three-year

6    statute of limitations.  *See Kloepfel v. Bokor*, 149 Wash.2d 192, 193 n. 1

7    (2003).  ("'Outrage' and 'intentional infliction of emotional distress' are synonyms

8    for the same tort."); *Cox v. Oasis Physical Therapy, PLLC*, 153 Wash. App. 176,

9    192, 222 P.3d 119, 127 (2009) (applying three-year statute of limitations from

10   RCW 4.16.080(2) to intentional infliction of emotional distress claim).  Plaintiff

11   contends that the incidents cited in the complaint constituted assault, intentional

12   infliction of emotional distress, and numerous other claims.  ECF No. 1 at 22-49.

13   However, Plaintiff's state law tort claims regarding the incidents that took place

14   prior to February 2021 for the claims subjects to the three-year limit, and prior to

15   February 2022 for the claims subject to the two-year limit, are barred by the statute

16   of limitations.

17   *2.  Section 1983 claims*

18        Defendant contends Plaintiff's Section 1983 claims are barred by the statute

19   of limitations.  ECF No. 13 at 8-9.  Section 1983 actions brought after the statute of

20   limitations may be dismissed under Federal Rule of Procedure 12(b)(6).  *See Watts*

ORDER - 12

*v. Graves,* 720 F.2d 1416, 1422-23 (5th Cir. 1983). Under the 12(b)(6) standard, a court cannot look beyond the pleadings, therefore the running of the statute of limitations must be apparent on the face of the complaint. *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 969 (9th Cir. 2010) (citing *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir. 2006)).

Under Section 1983, civil liability flows from a person acting under color of state law to deprive a plaintiff "of any rights, privileges, or immunities" protected by the U.S. Constitution and federal laws. 42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988). State law governs the timeliness of a Section 1983 claim. *Nance v. Ward*, 142 S. Ct. 2214, 2225 (2022). As such, a Section 1983 claim must commence within the statute of limitations for personal injury actions in the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Washington, a personal injury action expires at three years. RCW § 4.16.080(2); *see also Bagley v. CMC Real Est. Corp.*, 923 F.2d 758, 760 (9th Cir. 1991).

Whereas state law sets the outer limits of the statute of limitations, federal law determines when a statute of limitations begins to run. *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1048 (9th Cir. 2008). This date is synonymous with the "accrual" of a Section 1983 claim, meaning the date "the plaintiff knows or has reason to know of the injury that is the basis of the action." *Pouncil v. Tilton*,

ORDER - 13

704 F.3d 568, 573-74 (9th Cir. 2012).  Even if the plaintiff does not know the full extent of the injury, the cause of action accrues.  *Wallace*, 549 U.S. at 391.

Plaintiff alleges that numerous interactions with law enforcement and other state government officials constitute a pattern and practice of discrimination against him in violation of his First, Second, Fourth, Fifth, and Fourteenth amendment rights.  ECF No. 1 at 22, 25, 29, 32, 34, 37-38, 45, 47-48.  All but two of the incidents Plaintiff alleges violated his rights occurred between 2007 and 2012.  *Id.*

As discussed, *supra*, the applicable statute of limitations for Plaintiff's Section 1983 claims is three years.  *See* RCW 4.16.130.  Plaintiff filed his Complaint on February 1, 2024, which would bar any claims arising from events that occurred before February 1, 2021.  There is no evidence to suggest that Plaintiff did not know, or have reason to know, that his rights may have been violated following each instance discussed herein.  *See Pouncil*, 704 F.3d at 573-74; *Wallace*, 549 U.S. at 391.  There is no evidence to suggest that Plaintiff could not have pursued a Section 1983 action within the three-year statute of limitations. For these reasons, the Court determines that any possible Section 1983 claim(s) accrued immediately after the events occurred, and the statute of limitations began to run at that time.  The events that occurred in 2007, 2010, 2011, and 2012 are therefore barred by the statute of limitations.

ORDER - 14

1    Lastly, a plaintiff could invoke the "continuing violation doctrine" by

2 showing a series of related acts against one individual.  *Gutowsky v. County of*

3 *Placer*, 108 F.3d 256, 259 (9th Cir. 1997).  Though the doctrine has been

4 recognized, federal courts have generally been reluctant to apply the doctrine in

5 Section 1983 actions.  *Wallace,* 549 U.S. at 391-92.  The Supreme Court has

6 narrowly construed the doctrine in holding that it does not apply to "discrete acts"

7 merely because they are plausibly or sufficiently related to each other.  *National*

8 *Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002) (discussing the

9 doctrine on the context of a Title VII suit).  The Ninth Circuit has applied *Morgan*

10 to Section 1983 actions.  *See, e.g., Carpinteria Valley Farms, Ltd. v. Cnty. of Santa*

11 *Barbara*, 344 F.3d 822, 829 (9th Cir. 2003).

12    Here, Plaintiff appears to invoke the continuing violation doctrine.  ECF No.

13 16 at 2.  However, a traffic stop, refusal to pursue church theft accusations, an

14 altercation with the county auditor, request for identification, a parking altercation,

15 CPS's removal of Plaintiff's children, a refusal of the county clerk to give legal

16 advice, and the refusal of a sheriff to trespass somebody from property, are not

17 sufficiently related to invoke the doctrine.  Further, these incidences occurred over

18 a seventeen-year span and involved different government officials.  Given the

19 Supreme Court's narrow construction of the continuing violation doctrine, Plaintiff

20 cannot escape the statute of limitations via this doctrine.  As such, the Court finds

ORDER - 15

Plaintiff's claims concerning all but the 2022 and 2023 events are barred by the statute of limitations.

**B. Standing**

*1. Standing to Bring State Criminal Claims*

Defendant contends Plaintiff lacks standing to bring the state criminal claims. ECF No. 13 at 9. Plaintiff asserts numerous causes of action against GSCO and various other county officials.[3] All of these causes of action are brought under Title 9A of the Washington Revised Code, Washington's criminal code. Plaintiff, as a private citizen, lacks standing to bring these claims. Only the Attorney General of Washington or a County prosecutor may bring such actions in state Court. *See* RCW 43.10.232. No caselaw establishes a court's jurisdiction over a criminal matter initiated by a private citizen because a Washington Superior

---

[3] Plaintiff asserts causes of action for Assault under RCW 9A.36.011; Reckless Endangerment under RCW 9A.36.050; Harassment under RCW 9A.46.020; Stalking under RCW 9A.46.110; Coercion under RCW 9A.36.070; Theft from a Vulnerable Adult under RCW 9A.56.400; False Reporting under RCW 9A.84.040; Official Misconduct under RCW 9A.80.010; Conspiracy under RCW 9A.28.040; and Intimidation under RCW 9A.76.180. *See* ECF No. 1 at 21-22, 24, 27-29, 31-33, 36, 43-44, 47.

ORDER - 16

Court only acquires subject matter jurisdiction over a criminal action when an indictment or information is filed by the correct official in accordance with the state criminal court rules. *See State v. Barnes*, 43 P.3d 490, 494 (Wash. 2002) (en banc).

Here, Plaintiff is a private citizen who lacks standing to bring any claims under Title 9A of the Revised Code of Washington. Further, county prosecutors and the Attorney General of Washington may only bring such charges in state Superior Court. *See Barnes*, 43 P.3d at 494 (a [Washington state] *superior court* only acquires subject matter jurisdiction over a criminal action when it is filed by the correct official in accordance with the superior court rules) (emphasis added). In sum, Plaintiff lacks standing to bring such claims, and this Court would lack subject matter jurisdiction over the claims.

### 2. *Standing to Bring Failure of Duty Claim*

Plaintiff does not have standing to bring a failure of duty claim. RCW 42.20.100 provides: Whenever any duty is enjoined by law upon any public officer or other person holding any trust or enjoyment, their willful neglect to perform such duty, except where otherwise specially provided for, shall be a misdemeanor. RCW 42.20.100. Plaintiff claims that the incident involving GCSO Sheriff Drew Hyer (discussed *supra*) constitutes a failure of duty by a public officer pursuant to RCW 42.20.100. ECF No. 1 at 25-26. However, RCW 42.20.100 does not create

ORDER - 17

1  a private right of action.  *Sutton v. Washington State Department of Corrections*,

2  No. 2:13-CV-5064-SMJ, 2015 WL 4748233, at *5 (E.D. Wash. August 11, 2015)

3  ("[RCW 42.20.100 is a] criminal statute that [a] plaintiff cannot enforce.").  "No

4  relief is available under [that provision] because [it does] not grant plaintiff any

5  substantive rights or [cause] of action."  *Id.*  Plaintiff is therefore foreclosed from

6  making this claim.

7      *3.  Standing to Bring Unlawful Conduct Claim*

8      Plaintiff asserts a cause of action under 34 U.S.C. § 12601 for "persistent

9  malfeasance and nonfeasance."  ECF No. 1 at 49.  Plaintiff lacks standing to bring

10  that cause of action.  Title 34, United States Code, Section 12601(a) is a federal

11  statute that provides for a cause of action against any governmental authority or its

12  agents who deprive persons of their federally protected rights in the administration

13  of juvenile justice.  The statute confers exclusive standing to bring such actions on

14  the United States Attorney General.  *See* 34 U.S.C. § 12601(b).  It is unclear why

15  Plaintiff asserts this cause of action on his own behalf, given that there is no

16  evidence that his allegations implicate juvenile justice.  However, even if there was

17  merit to the claim, Plaintiff lacks standing to bring the claim.

18  **C. Failure to State a Claim under 42 U.S.C. § 1983**

19      Section 1983 requires a claimant to prove that (1) a person acting under

20  color of state law (2) committed an act that deprived the claimant of some right,

ORDER - 18

privilege, or immunity protected by the Constitution or laws of the United States. *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).  "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]."  *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1439 (9th Cir. 1991) (emphasis and brackets in the original) (internal quotation omitted), *abrogated in part on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

A complaint must set forth the specific facts upon which the plaintiff relies in claiming the liability of each defendant.  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Although the standard to evaluate a motion to dismiss is liberal, particularly when the action has been filed *pro se*, a liberal interpretation of a civil rights complaint may not supply essential elements of a claim that the plaintiff initially failed to plead.  *Id*.  Thus, to withstand dismissal on a Section 1983 claim, Plaintiff must set forth facts demonstrating how each Defendant caused or personally participated in causing a deprivation of Plaintiff's protected rights.  *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff does not set forth sufficient facts to state a Section 1983 claim.  For the reasons discussed above, Plaintiff may not invoke the "continuing violations"

doctrine to bring his allegations within the statute of limitations. Because Plaintiff cannot bring the above discussed allegations within the statute of limitations, he is not able to identify a policy, practice, or custom that is alleged to be the moving force behind a constitutional violation, neither Garfield County nor its Sheriffs' office may be held liable under Section 1983 for the incidents that took place prior to February 2022. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dept. of Soc. Servs. Of New York*, 436 U.S. 658, 694 (1978)).

The only incident not barred by the statute of limitations, in which Plaintiff claims his civil rights were violated, is the 2022 incident in which Ms. Gormsen declined to provide Plaintiff legal advice. Plaintiff contends the incident violated Plaintiff's First Amendment right to "redress against the government." ECF No. 1 at 47. A First Amendment access to court claim requires the plaintiff demonstrate the plaintiff has been or will be unable to pursue a claim because the defendant's actions denied the plaintiff meaningful access to the court. *Thompson v. Febvre*, No. 3:23-CV-00091-SLG, 2023 WL 8995373, at *1 (D. Alaska Dec. 28, 2023) (citing *Christopher v. Harbury*, 536 U.S. 403, 4-15416 (2002)). The plaintiff must allege an actual injury, such as an inability to meet a deadline or file a claim. *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011). Plaintiff

ORDER - 20

does not explain how he was denied access to the court or demonstrate any harm. As such, Plaintiff has failed to state a First Amendment claim.

Plaintiff appears to allege the 2023 incident violated his "constitutional rights," but does not elaborate on the claim. ECF No. 1 at 49. In sum, Plaintiff's Section 1983 claims cannot survive GCSO's motion to dismiss.

### D. Failure to State a claim under the Americans with Disabilities Act

Defendant contends Plaintiff has not stated a plausible claim for relief under the ADA. ECF No. 13 at 10-11. To state a claim of disability discrimination under Title II, a plaintiff must allege four elements: (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002) (per curiam), *cert. denied,* 538 U.S. 921 (2003).

Plaintiff alleges he is an individual with a disability but does not allege that he was excluded or denied benefits or otherwise discriminated against because of his disability. Plaintiff states he asked the county clerk for advice, and she told him she could not provide legal advice. ECF No. 1 at 46-47. It is not the role of

ORDER - 21

the County Clerk to provide legal advice to litigants, and there is no evidence that

Ms. Gormsen declined to provide legal advice to Plaintiff *because of* his disability.

*See Weinrich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976,

978 (9th Cir. 1997) (the exclusion, denial of benefits, or discrimination must be

"by reason of" the plaintiff's disability to establish liability under Title II of the

ADA).  In fact, it is a crime in Washington to practice law or give legal advice

without a license to do so.  *See State v. Yishmael*, 456 P.3d 1172, 1175 (Wash.

2020) (citing RCW 2.48.180(3)).  Plaintiff has not stated a plausible claim for

relief under the ADA because he has failed to plead facts showing that he was

denied a generally available public benefit because of his disability.

**E. Motion Requesting Judicial Notice**

In response to GCSO's Motion to Dismiss, Plaintiff filed a Request for

Judicial Notice in Support of Opposition to Defendant's Motion to Dismiss

("Request").  ECF No. 17.  In the Request, Plaintiff asks the Court to take judicial

notice that (1) the Department of Veteran's affairs Disability Rating Decision

Statement, March 30, 2020; (2) Plaintiff is a *pro se* litigant; (3) Plaintiff has severe

physical limitations that affect his ambulatory capability; (4) Plaintiff is mentally

disabled and must have a fiduciary due to his post-traumatic stress disorder; (5)

and Plaintiff suffers from numerous PTSD symptoms.  *Id.* at 1-2; ECF No. 17-2.

Federal Rule of Evidence 201(b) states that facts that may be judicially noticed include those that are not subject to reasonable dispute because they either (1) are generally known within the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b) is not applicable in these circumstances because Plaintiff's personal and medical details are not "generally known" in the Eastern District of Washington.  Additionally, prong two is not applicable to these facts because some of the facts are reasonably disputable or impeachable.

Finally, Plaintiff's status as a *pro se* litigant is irrelevant in the context of his motion.  While *pro se* pleadings are held to less stringent standards than those prepared by attorneys, *pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record.  *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).  Plaintiff has not stated a proper request for judicial notice of facts.  Accordingly, the motion is denied.

**F.  Motion for Leave to Amend Complaint**

The Court does not find good cause to grant plaintiff an opportunity to amend his complaint.  On April 18, 2024, Plaintiff filed a Motion for Leave to Amend Complaint.  ECF No. 18.  Defendant GSCO opposes the Motion.  *See* ECF No. 20.

ORDER - 23

Fed R. Civ. P. 15(a)(1) allows a plaintiff to amend their complaint within 21 days of filing the original complaint.  Rule 15(a)(1)(B) authorizes a party to amend his or her complaint once "as of right," or without Court permission, no later than 21 days after a pleading requiring a response (here a 12(b)(6) motion) is filed. When a party properly invokes their right to amend under Rule 15(a)(1), the Court may not deny the litigant permission to do so.  *Martensen v. Chicago Stock Exchange*, 882 F.3d 744, 745 (7th Cir. 2018).

However, Courts have held that when a party who otherwise could amend as a matter of right *nevertheless* files a motion seeking leave to amend, the party waives its right to amend as a matter of course and invites the Court to review its proposed amendments.  *See Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (emphasis added); *Glazer v. Chase Home Finance, LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (plaintiff waived his right to amend as a matter of course by filing a motion seeking leave to amend); *McKinney v. Irving Independent School Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (holding that the trial court did not abuse its discretion in denying plaintiff's motion for leave to amend because plaintiffs had not properly invoked their right under Rule 15); *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008) ("a district Court need not allow the filing of an amended complaint … if it is clear that the proposed complaint is deficient and would not survive a motion to dismiss.")

ORDER - 24

Here, Plaintiff filed his Motion Seeking Leave to Amend, ECF No. 18, on April 18, 2024.  He was within the 21-day period allowed under Fed. R. Civ. P. 15(a)(1)(B) as he filed his motion for leave to amend in response to GCSO's motion to dismiss.  *See* Fed. R. Civ. P. 15(a)(1)(B) (plaintiff has 21 days to amend a pleading after service of a motion under Rule 12(b)).  However, by filing the instant motion for leave to amend, instead of simply filing an amended complaint, plaintiff waived his right to amend as a matter of course and invited the Court to consider his proposed amended complaint.  ECF No. 18-1; *see McCarty*, 605 F.3d at 870; *Glazer*, 704 F.3d at 458.  The Court has reviewed Plaintiff's proposed amended complaint and is unable to find any substantial differences.  *Compare* ECF No. 1 *with* ECF No. 18-2.  The Court finds that allowing amendment would be futile, since Plaintiff could not overcome the statute of limitations and lack of standing by alleging more facts.  For these reasons, Plaintiff's motion to amend his complaint is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant Garfield County, Washington, Sheriff's Department's Motion to dismiss, **ECF No. 13**, is **GRANTED.**  Defendant Garfield County, Washington, Sheriff's Department is **DISMISSED** from this action.

2. Plaintiff's Request for Judicial Notice in Support of Opposition to Defendant's Motion to Dismiss, **ECF No. 17**, is **DENIED.**

ORDER - 25

3. Plaintiff's Motion for Leave to Amend Complaint, **ECF No. 18,** is

**DENIED.**

The District Court Executive is directed to file this Order, provide copies to

counsel and *pro se* Plaintiff, and **TERMINATE Defendant Garfield County,**

**Washington, Sheriff's Department from this action**.

DATED May 30, 2024.

<u>*s/Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 26