FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 10, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DARYL T. BROOKS JR., | No. 2:24-CV-00029-MKD |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT, AND DENYING PLAINTIFF'S REQUEST FOR ELECTRONIC ACCESS |
| v. | |
| WASHINGTON STATE DSHS; GARFIELD COUNTY WASHINGTON SHERIFF'S DEPARTMENT; LAKE OF THE WOODS COUNTY MINNESOTA CPS AGENCY DIRECTOR AMY BALLARD, in her personal capacity, | |
| | **ECF Nos. 22, 24, 27, 29** |
| Defendants. | |

Before the Court is Defendant Ballard's Motion to Dismiss, ECF No. 22,

Washington State Department of Health and Human Services' (DSHS) Motion to

Dismiss, ECF No. 24, Plaintiff's Motion for Electronic Access, ECF No. 27, and

Plaintiff's Motion for Leave to Amend, ECF No. 29. The Court has reviewed the

record and is fully informed. For the reasons set forth below, the Court grants

ORDER - 1

Defendants' Motions to Dismiss, denies Plaintiff's Motion for Electronic Access, and denies Plaintiff's Motion for Leave to Amend Complaint.

## BACKGROUND

**A. Procedural History**

On February 1, 2024, Plaintiff filed a *pro se* Complaint against Lake of the Woods, Minnesota Child Protective Services (CPS) Agency Director Amy Ballard[1], the Garfield County Washington Sheriff's Department (GCSO), and DSHS.  ECF No. 1.  On April 4, 2024, the GCSO filed a Motion to Dismiss under Rule 12(b)(6).  ECF No. 13.  Plaintiff filed a response to the Motion to Dismiss, and a Motion for Leave to Amend Complaint.  ECF Nos. 16, 18.  On May 30, 2024, the Court granted the GCSO's Motion to Dismiss and denied Plaintiff's Motion for Leave to Amend Complaint.  ECF No. 28.  On April 30, 2024, Defendant Ballard filed a Motion to Dismiss, ECF No. 22, and on May 6, 2024, Defendant DSHS filed a Motion to Dismiss, ECF No. 24.  Plaintiff filed responses, as well as a second Motion for Leave to Amend Complaint.  ECF Nos. 26, 29, 30.

**B. Summary of Allegations**

In his 56-page Complaint, Plaintiff alleges 54 claims for relief.  ECF No. 1. The allegations in the Complaint arise out of a series of CPS reports made by

---

[1] Defendant Ballard is named in this suit in her personal capacity.  ECF No. 1 at 1.

ORDER - 2

Plaintiff's ex-wife, Gina Heathcott, and other interactions with law enforcement and government officials that took place from 2006 through 2023. *Id.* at 7.[2] Based on this series of interactions, Plaintiff alleges that the defendants violated his First, Second, Fourth, Fifth, and Fourteenth Amendment rights. *Id.* at 5. He also alleges intentional infliction of emotional distress, assault, reckless endangerment, stalking, harassment, false reporting, official misconduct, unlawful conduct, conspiracy, violations of the Americans with Disabilities Act (ADA), solicitation to commit act of violence, discrimination, failure of duty, destruction of his parent-child relationships, coercion, and intimidation. *Id.* at 5, 12-56. Plaintiff seeks $15,000,000 in damages, and declaratory relief. *Id.* at 52, 55.

    *1. Incidents in 2004 to 2007*

    Plaintiff shares four children with Ms. Heathcott. *Id.* at 9. From 2004 through 2006, Ms. Heathcott made reports to the Lake of the Woods County law enforcement and CPS "to interfere with [P]laintiff's parenting time." *Id.* Defendant Ballard was involved in the CPS investigation, and Plaintiff's children

_____

[2] The page numbers cited in this Order are the page numbers generated by the Court's CM/ECF system, found in the top right corner of the documents. Plaintiff's page numbering, found in the bottom right corner of the Complaint, is different than the CM/ECF numbering.

ORDER - 3

were removed from Plaintiff from 2007 to 2009. *Id.* at 9, 16-17. Plaintiff was not allowed to communicate with his children except in limited situations, and after Ms. Heathcott threatened to report Plaintiff for harassment, Plaintiff ceased contact with his children. *Id.* at 17-18. Plaintiff's parenting plan was modified without notice to Plaintiff. *Id.* at 18. Plaintiff alleges these incidents violated his Fourth Amendment and Fourteenth Amendment rights and amounted to intentional infliction of emotional distress. *Id.* at 12-13, 19.

In July or August 2006, Defendant Ballard informed Plaintiff that Ms. Heathcott had attacked his eldest son, and Plaintiff needed to return to retrieve his son. *Id.* at 13. Plaintiff was working as a truck driver, and he arrived to retrieve his son two days after the call; he also sought an Order for Protection against Ms. Heathcott and to remove his other children from Ms. Heathcott's home. *Id.* Defendant Ballard and the Chief of Police threatened Plaintiff that if he filed the Order of Protection, Defendant Ballard would remove all of Plaintiff's children to foster care. *Id.* Plaintiff was then served an Order for Protection, denying him contact with his three younger children, which Plaintiff had to defend against in court. *Id.* at 14. Plaintiff also contends this incident violated his Fourteenth Amendment rights and amounted to intentional infliction of emotional distress. *Id.* at 14-15.

ORDER - 4

*2. Incidents in 2007*

In July 2007, Plaintiff was riding in a vehicle with his now wife, Heide Brooks. *Id.* at 20. A GCSO deputy shined a light into the windshield, and Plaintiff and his wife were "temporarily blinded" by the action. *Id.* at 21. The deputy stopped Plaintiff's vehicle and told Plaintiff that the view of his rear tag light was obstructed from full view. *Id.* Plaintiff left with a warning to repair the tag light, but Plaintiff states the light was working when Plaintiff returned home. *Id*. Plaintiff claims that this stop constituted reckless endangerment, assault, harassment, and a violation of his Fourth Amendment rights. *Id.* at 22.

In September 2007, Plaintiff's wife called the GSCO for help with an altercation between Plaintiff's son and Ms. Brooks' son. *Id.* at 23. The deputy that responded to the call told Plaintiff that it was "silly" to call law enforcement regarding such a dispute, and Plaintiff "understood that the deputy was refusing to render services." *Id.* Plaintiff told the deputy to leave, and the deputy "protested the demand for his exit," but then left. *Id.* at 24. Plaintiff's wife later reported the deputy would "aggressively tailgate" her when he saw her around town. *Id.* Plaintiff claims that these interactions violated his First and Fourteenth Amendment rights and amounted to stalking and failure of duty by a public officer. *Id.* at 25.

ORDER - 5

### 3. Incidents in 2009 to 2011

Plaintiff's Complaint discusses a series of events that took place between 2009 and 2011. *Id.* at 25-27. It is unclear when in that date range the alleged violations of Plaintiff's rights occurred. Plaintiff states he was asked to pick up his two youngest children from Ms. Heathcott in April 2009. *Id.* His older children lived with Ms. Heathcott and her family until fall 2011. *Id.* Plaintiff was required to pay child support for all four children during an unclear period, and Ms. Heathcott did not return the court-ordered child support back to Plaintiff. *Id.* at 26-27. Plaintiff alleges these incidents amount to coercion, theft from a vulnerable adult, and intentional infliction of emotional distress. *Id.* at 27.

### 4. Incident in 2010

In 2010, Plaintiff's stepson and daughter were visiting the Pomeroy Church of the Nazarene and were accused of stealing by the church administration, and the children were separated from the other children and "held against their will." *Id.* at 27-28. Plaintiff and his wife were not notified of the accusations. *Id.* Plaintiff reported the incident to GSCO "so that the individuals involved could be arrested and prosecuted for the false imprisonment and the threatening of the two minor children." *Id.* at 28. A GCSO sheriff arrived, who was allegedly a member of the Church, and asked Plaintiff to meet with the Church leaders while the sheriff mediated the meeting. *Id.* Plaintiff claims that the sheriff's failure to take "legal

action" against the Church constitutes a violation of his Fourteenth amendment rights, and amounted to coercion, failure of duty by public officer, and official misconduct. *Id.* at 28-29.

### 5. Incidents in 2011

In October or November 2011, Garfield County Deputy Auditor Tina Keller reported that Plaintiff had an outburst and made threatening remarks against her, which Plaintiff denies. *Id.* at 30. A GSCO sheriff, who was also Tina Keller's husband, travelled to Plaintiff's home to confront him about the incident. *Id.* Plaintiff alleges that this constituted false reporting, official misconduct, conspiracy, intentional infliction of emotional distress, and denial of his First Amendment rights, among other things. *Id.* at 30-32.

In December 2011, Plaintiff and his wife were feeding his horse at the county fairground stalls. *Id.* at 32. A GCSO deputy requested identification and Plaintiff refused. *Id.* The deputy continued to request identification until Plaintiff's wife presented her identification and the encounter ended. *Id.* at 33. Plaintiff claims that this interaction constituted harassment, official misconduct, and a violation of his First and Fourteenth Amendment rights, among other things. *Id.* at 33-34.

ORDER - 7

1   *6. Incidents in 2012*

2   In June 2012, Plaintiff was vacating his rental unit. *Id.* at 35. All the

3   parking spaces around the unit were illegally occupied by patrons of an annual car

4   show. *Id.* A GCSO chief deputy arrived when Plaintiff had a verbal altercation

5   with some of the patrons, to ensure that Plaintiff did not attempt to move the

6   vehicles himself. *Id.* at 36. Plaintiff states a GCSO sheriff, who was off duty,

7   shouted "I hate him!", referencing Plaintiff. *Id.* Plaintiff alleges that this incident

8   constituted failure of duty by public officer, official misconduct, conspiracy, and a

9   violation of his Fourth, Fifth, and Fourteenth Amendment rights. *Id.* at 36-38.

10  In March or April 2012, Plaintiff filed a motion for custody of his son in

11  Garfield County Superior Court and was granted temporary sole custody. *Id.* at 38.

12  Plaintiff alleges that his Ms. Heathcott harassed him about the motion for custody

13  via calls and e-mails, but the GCSO failed to pursue the allegations. *Id.* at 39.

14  Plaintiff alleges that Ms. Heathcott prompted two of Plaintiff's children to leave

15  Plaintiff's residence and "make false and/or misleading accusations of abuse" to

16  the GCSO on two occasions. *Id.* Plaintiff alleges the GCSO conspired with Ms.

17  Heathcott to seize Plaintiff's children, and they kept the children's location secret

18  from Plaintiff pending an abuse investigation. *Id.*

19  In July 2012, the GCSO notified Spokane County CPS of the alleged abuse

20  and CPS agent Heidi Pinkert arrived to investigate. *Id.* at 40. Plaintiff showed

ORDER - 8

1   Defendant Pinkert this disability ruling and a copy of the custody order, and was

2   told "none of these matter." *Id.* at 41.  Plaintiff and his children were interviewed

3   by Ms. Pinkert and Plaintiff signed a protective action form "under the threat of

4   forceful removal of his children." *Id.*  Plaintiff reported the "illegal actions" of the

5   individuals related to this incident to multiple people, but no actions have been

6   taken. *Id.* at 42-43.

7        Plaintiff also believes that his home remains under surveillance by the

8   GCSO and Washington State Patrol. *Id.*  Plaintiff claims that this series of

9   incidents amount to harassment, conspiracy, coercion, destruction of parent-child

10  relationship, official misconduct, intentional infliction of emotional distress, and

11  intimidation, and constitutes a violation of his Fourth and Fourteenth Amendment

12  rights, among other things. *Id.* at 43-45.

13      *7. Incident in 2022*

14       On December 28, 2022, Plaintiff called county clerk Marie Gormsen, to ask

15  whether a tort form was necessary to sue the county. *Id.* at 46.  Ms. Gormsen

16  informed Plaintiff she could not give legal advice. *Id.*  Plaintiff responded to Ms.

17  Gormsen with "strong, clear, and determined language," and she asked Plaintiff to

18  stop yelling; Plaintiff stated he had PTSD and spoke in that manner all the time.

19  *Id.* at 47.  Ms. Gormsen reportedly stated, "Wow, I am sure am glad I don't have to

20  talk to you everyday." *Id.* (as written).  Plaintiff alleges this incident violated his

ORDER - 9

First Amendment rights and amounted to official misconduct, harassment, and disability discrimination. *Id.* at 47-48.

8. *Incident in 2023*

On January 6, 2023, Plaintiff contacted Sheriff Hyer regarding a reported theft on his property. *Id.* at 48. Plaintiff told Sheriff Hyer to trespass his neighbor if she did not remove her belongings from a disputed property. *Id.* Sheriff Hyer stated the "contract for deed that was registered at the courthouse" did not mean Plaintiff could possess the property, which Plaintiff contends "was a thinly veiled threat." *Id.* Plaintiff contends this incident amounted to unlawful conduct. *Id.* at 49.

**LEGAL STANDARD**

When a defendant moves for dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), it is the plaintiff who "bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted). When the defendant's motion to dismiss relies only on written materials, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* (quotation and citation omitted). The court must determine whether a plaintiff's "pleadings and affidavits establish" the requisite showing. *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1286 (9th Cir. 1977). "The plaintiff cannot 'simply rest on the bare

ORDER - 10

allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting *Schwarzenegger*, 374 F.3d at 800). If any conflict exists between the parties' evidence, the court must resolve it in the plaintiff's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Although *pro se* pleadings are held to less stringent standards than those prepared by attorneys, *pro se* litigants in an ordinary civil case should not be treated more favorably than parties with attorneys of record. *See Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss for failure to state a claim, the Court must accept as true the well-pleaded factual allegations and any reasonable inference to be drawn from them, but legal conclusions are not entitled to the same assumption of truth. *Id.* A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 562 (2007). "Factual allegations must be enough to raise a right to relief above the

speculative level." *Id.* at 555.  Although *pro se* pleadings are held to less stringent standards than those prepared by attorneys, *pro se* litigants in an ordinary civil case should not be treated more favorably than parties with attorneys of record.  *See Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

A complaint may only be dismissed on statute of limitations grounds, pursuant to Rule 12(b)(6), if it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (internal citations omitted).  The running of the statute of limitations must be apparent on the face of the complaint.  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

## DISCUSSION

### A. Defendant Ballard's Motion to Dismiss

On April 30, 2024, counsel filed a Motion to Dismiss on behalf of "Lake of the Woods County, Minnesota" and Defendant Ballard.  ECF No. 22 at 1.  Lake of the Woods County is not a party to this action.  Defendant's Complaint lists Amy Ballard as a Defendant, ECF No. 1 at 3-4, and lists Defendant Ballard as "Lake of the Woods County Minnesota CPS Agency Director Amy Ballard in her personal capacity," *id.* at 1.  Plaintiff's response notes that Lake of the Woods County is not

a party.  ECF No. 26 at 2.  As the Lake of the Woods County is not a party, the Court addresses the motion as Defendant Ballard's Motion.

Defendant Ballard contends this Court does not have jurisdiction over Defendant.  ECF No. 22 at 3-7.  If the Court found personal jurisdiction, Defendant Ballard alternatively contends the claims are barred by the statute of limitations. *Id.* at 7-9.

### 1. Personal Jurisdiction

Defendant Ballard contends this Court does not have jurisdiction over Defendant.  *Id.* at 3-7.  "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).  "Where, [as in this matter], there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies."  *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003); *see* Fed. R. Civ. P. 4(k)(1).  Washington's long-arm statute authorizes courts to exercise jurisdiction over nonresident defendants to the "full extent" of the Due Process Clause.  *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004) (citing *Shute v. Carnival Cruise Lines, Inc.*, 783 P.2d 78, 79-80 (Wash. 1989)); *see also Corker v. Costco Wholesale Corp.*, 585 F. Supp. 3d 1284, 1290 (W.D. Wash. 2022).  Accordingly, the Court need only determine whether exercising personal jurisdiction in this case

comports with due process.  *See Yamashita v. LG Chem, Ltd*., 62 F.4th 496, 502

(9th Cir. 2023).  Due process requires that the defendant have "certain minimum

contacts" with a forum state "such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457,

463 (1940)).

The Supreme Court has recognized two kinds of personal jurisdiction:

general and specific.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.

915, 919 (2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

U.S. 408, 414, nn. 8 & 9 (1984)).  "A court has general jurisdiction over a

defendant only when the defendant's contacts with the forum state are so

'continuous and systematic as to render [them] essentially at home in the forum

State.'"  *LNS Enterprises LLC v. Cont'l Motors, Inc*., 22 F.4th 852, 859 (9th Cir.

2022).  Specific jurisdiction, "covers defendants that are less intimately connected

with a state, but that have sufficient minimum contacts with the state that are

relevant to the lawsuit."  *Id.* at 859.

First, Defendant Ballard contends she does not have the requisite contacts

with Washington required to establish general jurisdiction.  ECF No. 22 at 6.

Defendant Ballard works in Minnesota and has never traveled to Washington in a

professional capacity.  *Id.*; ECF No. 23 at 2.  Plaintiff concedes Defendant Ballard

has not had a physical presence in Washington and does not appear to present any

evidence to support a finding of general jurisdiction.  *See* ECF No. 26 at 4.

Plaintiff discusses cases that addressed general jurisdiction but offers no

explanation as to how Defendant Ballard has had continuous systematic contact

with the state of Washington.  *Id.*  Plaintiff has not established general jurisdiction.

Second, Defendant Ballard contends the acts complained of do not arise out

of or relate to any acts within Washington, and it thus would be unreasonable to

find specific jurisdiction exists over a Minnesota employee for actions that

occurred entirely outside of Washington.  ECF No. 22 at 6-7.  The Ninth Circuit

has set forth a three-prong test to determine if a nonresident defendant has

sufficient minimum contacts to establish personal jurisdiction over the defendant:

> (1) The non-resident defendant must purposefully direct his activities
> or consummate some transaction with the forum or resident
> thereof; or perform some act by which he purposefully avails
> himself of the privilege of conducting activities in the forum,
> thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the
> defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and
> substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th

Cir. 1987)).

ORDER - 15

Defendant contends all the activities at issue occurred in Minnesota, while Plaintiff was in Minnesota and none of the activities involved the state of Washington. ECF No. 22 at 7; ECF No. 23 at 2-3. Plaintiff appears to concede the events took place in Minnesota but contends the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) stipulates there is continuing jurisdiction for child custody litigation in the courts of the child's home state. ECF No. 26 at 3. Plaintiff contends the UCCJEA thus provides this Court personal jurisdiction over Defendant Ballard. *Id.* The UCCJEA is a uniform law that applies to child custody issues, and it has been adopted by several states; it is not a federal law and it does not confer jurisdiction in a federal case. *See Cathey v. Harrison*, No. 116CV00545LJOMJS, 2016 WL 4494446, at *2 (E.D. Cal. Aug. 25, 2016). Plaintiff also contends the actions in Minnesota have caused ongoing injuries to Plaintiff now that he resides in Washington and the continuing sequence of events provides personal jurisdiction. *Id.* at 4. Plaintiff's bare assertions that events that took place in Minnesota later caused him harm while he was living in Washington does not establish personal jurisdiction. *See Mavrix Photo, Inc.*, 647 F.3d at 1223. Plaintiff has not established specific jurisdiction.

As Plaintiff has not demonstrated the Court has personal jurisdiction over Defendant Ballard, the Motion to Dismiss is granted.

ORDER - 16

1    2.  *Statute of Limitations*

2        As the Court does not have personal jurisdiction over Defendant Ballard, the

3    Court grants Defendant's Motion to Dismiss.  Thus, the Court need not reach the

4    statute of limitations issue.

5    **B. DSHS' Motion to Dismiss**

6        Defendant DSHS contends Plaintiff's claims fail to state a claim because

7    they are barred by the statute of limitations, Plaintiff lacks standing to bring the

8    criminal claims and destruction of parent-child relationship claim, and he fails to

9    state a claim under the Americans with Disabilities Act (ADA).  ECF No. 24.

10   DSHS also contends Plaintiff failed to properly serve Defendant.  *Id.* at 5-7.

11   1.  *Statute of Limitations*

12       DSHS contends Plaintiff's claims are barred by the statute of limitations.  *Id.*

13   at 4.  The only allegations in Plaintiff's Complaint that concern DSHS are related

14   to events that took place in 2012.  ECF No. 1 at 40-43.  Plaintiff filed the

15   Complaint on February 1, 2024.

16       i.  State law claims

17       As discussed in the Court's prior Order, the state law claims are barred by

18   the statute of limitations.  ECF No. 28 at 12.  Plaintiff's allegations that Ms.

19   Pinkert's actions in 2012 amounted to intentional infliction of emotional distress

20   are barred by the statute of limitations.  *See Kloepfel v. Bokor*, 149 Wash.2d 192,

ORDER - 17

193 n. 1 (2003).  ("'Outrage' and 'intentional infliction of emotional distress' are synonyms for the same tort."); *Cox v. Oasis Physical Therapy, PLLC*, 153 Wash. App. 176, 192, 222 P.3d 119, 127 (2009) (applying three-year statute of limitations from RCW 4.16.080(2) to intentional infliction of emotional distress claim).  It is unclear if Plaintiff alleges Ms. Pinkert committed other torts against Plaintiff, but any other allegations arising out of the 2012 events would also be barred by the statute of limitations.  *See* RCW 4.16.100.

## ii.  Section 1983 claims

Plaintiff's section 1983 claims are also barred by the statute of limitations. *See* ECF No. 28 at 12-16.  Section 1983 actions brought after the statute of limitations may be dismissed under Federal Rule of Procedure 12(b)(6).  *See Watts v. Graves,* 720 F.2d 1416, 1422-23 (5th Cir. 1983).  Under the 12(b)(6) standard, a court cannot look beyond the pleadings, therefore the running of the statute of limitations must be apparent on the face of the complaint.  *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 969 (9th Cir. 2010) (citing *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir. 2006)).

Under Section 1983, civil liability flows from a person acting under color of state law to deprive a plaintiff "of any rights, privileges, or immunities" protected by the U.S. Constitution and federal laws.  42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988).  State law governs the timeliness of a Section 1983

ORDER - 18

1  claim. *Nance v. Ward*, 142 S. Ct. 2214, 2225 (2022). As such, a Section 1983

2  claim must commence within the statute of limitations for personal injury actions

3  in the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387

4  (2007). In Washington, a personal injury action expires at three years. RCW §

5  4.16.080(2); *see also Bagley v. CMC Real Est. Corp.*, 923 F.2d 758, 760 (9th Cir.

6  1991).

7      Whereas state law sets the outer limits of the statute of limitations, federal

8  law determines when a statute of limitations begins to run. *Lukovsky v. City &*

9  *Cnty. of S.F.*, 535 F.3d 1044, 1048 (9th Cir. 2008). This date is synonymous with

10  the "accrual" of a Section 1983 claim, meaning the date "the plaintiff knows or has

11  reason to know of the injury that is the basis of the action." *Pouncil v. Tilton*,

12  704 F.3d 568, 573-74 (9th Cir. 2012). Even if the plaintiff does not know the full

13  extent of the injury, the cause of action accrues. *Wallace*, 549 U.S. at 391.

14      Plaintiff alleges that Ms. Pinkert's actions in 2012 violated his Fourteenth

15  Amendment and Fourth Amendment rights. ECF No. 1 at 40-44. As discussed,

16  *supra*, the applicable statute of limitations for Plaintiff's Section 1983 claims is

17  three years. *See* RCW 4.16.130. Plaintiff filed his Complaint on February 1, 2024,

18  which would bar any claims arising from events that occurred before February 1,

19  2021. There is no evidence or allegation suggesting that Plaintiff did not know, or

20  have reason to know, that his rights may have been violated following each

ORDER - 19

instance discussed herein.  *See Pouncil*, 704 F.3d at 573-74; *Wallace*, 549 U.S. at 391.  There is no evidence to suggest that Plaintiff could not have pursued a Section 1983 action within the three-year statute of limitations.  For these reasons, the Court determines that any possible Section 1983 claim(s) accrued immediately after the events occurred, and the statute of limitations began to run at that time.

Plaintiff contends his claims are for the loss of his Second Amendment rights and "loss of personal agency which was determined in 2020 by the Veterans Administration's adjudication process."  ECF No. 30 at 6.  Plaintiff alleges all claims for relief against Defendants are connected to Plaintiff's injury.  *Id.*  It is unclear how a 2020 Veterans Affairs determination, nor Plaintiff's Second Amendment rights, are connected to Ms. Pinkert's 2012 actions.  Plaintiff has not set forth any explanation as to why the statute of limitations does not bar his claims.  Thus, the Court finds that Plaintiff's claims are barred by the statute of limitations.

### 2.  Standing to Bring State Criminal Claims

Defendant contends Plaintiff lacks standing to bring the state criminal claims.  ECF No. 24 at 7.  As discussed in the Court's prior Order, Plaintiff asserts

ORDER - 20

numerous criminal causes of action,[3] which are brought under Title 9A of the

Washington Revised Code, Washington's criminal code.  Plaintiff, as a private

citizen, lacks standing to bring these claims.  Only the Attorney General of

Washington or a County prosecutor may bring such actions in state Court.  *See*

RCW 43.10.232.  No caselaw establishes a court's jurisdiction over a criminal

matter initiated by a private citizen because a Washington Superior Court only

acquires subject matter jurisdiction over a criminal action when an indictment or

information is filed by the correct official in accordance with the state criminal

court rules.  *See State v. Barnes*, 43 P.3d 490, 494 (Wash. 2002) (en banc).

Here, Plaintiff is a private citizen who lacks standing to bring any claims

under Title 9A of the Revised Code of Washington.  Further, county prosecutors

and the Attorney General of Washington may only bring such charges in state

---

[3] Plaintiff asserts causes of action for Assault under RCW 9A.36.011; Reckless

Endangerment under RCW 9A.36.050; Harassment under RCW 9A.46.020;

Stalking under RCW 9A.46.110; Coercion under RCW 9A.36.070; Theft from a

Vulnerable Adult under RCW 9A.56.400; False Reporting under RCW 9A.84.040;

Official Misconduct under RCW 9A.80.010; Conspiracy under RCW 9A.28.040;

and Intimidation under RCW 9A.76.180.  *See* ECF No. 1 at 21-22, 24, 27-29, 31-

33, 36, 43-44, 47.

ORDER - 21

1    Superior Court.  *See Barnes*, 43 P.3d at 494 (a [Washington state] *superior court*

2    only acquires subject matter jurisdiction over a criminal action when it is filed by

3    the correct official in accordance with the superior court rules) (emphasis added).

4    In sum, Plaintiff lacks standing to bring such claims, and this Court would lack

5    subject matter jurisdiction over the claims.  Plaintiff concedes he lacks standing to

6    bring the claims and states he "does not wish to bring criminal claims before this

7    court." ECF No. 30 at 3.  As such, the criminal claims are dismissed.

8        *3. Standing to Bring Destruction of Parent-Child Relationship Claim*

9        DSHS contends Plaintiff lacks standing to bring a destruction of parent-child

10   relationship claim.  ECF No. 24 at 7-8.  RCW 4.24.010 states a parent or legal

11   guardian who has regularly contributed to the support of their minor child may

12   maintain or join as a party an action as plaintiff for the "injury or death of the

13   child."

14       Plaintiff alleges there has been destruction of a parent-child relationship,

15   pursuant to RCW 4.24.010.  ECF No. 1 at 43.  The allegation appears to be based

16   on Plaintiff's children being "overtly disrespectful" to Plaintiff and his wife, the

17   allegations of abuse against Plaintiff, the children later being "seized," and their

18   location not being shared with Plaintiff.  *Id.* at 38-46.  Plaintiff does not allege any

19   of his children were injured or died.  As such, Plaintiff lacks standing to bring a

20   claim pursuant to RCW 4.24.010.

ORDER - 22

Plaintiff states he "agrees that RCW 4.24.010 was the incorrect code for destruction of the parent-child relationship," but he continues to assert Defendants' actions/inactions destroyed his relationship with his children and contributed to his injury.  ECF No. 30 at 3.  Plaintiff cites to codes concerning the definition of parents and parent-child relationships in Washington but does not set forth any facts to support a destruction of parent-child relationship claim.  As such, the claim is dismissed.

### 4.  Failure to State a Claim under 42 U.S.C. § 1983

Section 1983 requires a claimant to prove that (1) a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).  "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]."  *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1439 (9th Cir. 1991) (emphasis and brackets in the original) (internal quotation omitted), *abrogated in part on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).  A government entity is only a "person" subject to liability under section 1983

ORDER - 23

where an official policy, practice, or custom causes a constitutional tort.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).

A complaint must set forth the specific facts upon which the plaintiff relies in claiming the liability of each defendant.  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Although the standard to evaluate a motion to dismiss is liberal, particularly when the action has been filed *pro se*, a liberal interpretation of a civil rights complaint may not supply essential elements of a claim that the plaintiff initially failed to plead.  *Id*.  Thus, to withstand dismissal on a Section 1983 claim, Plaintiff must set forth facts demonstrating how each Defendant caused or personally participated in causing a deprivation of Plaintiff's protected rights.  *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

The only DSHS-related action that Plaintiff contends violated his rights took place in 2012.  ECF No. 1 at 40-43.  As the claim is barred by the statute of limitations, as discussed *supra,* Plaintiff has failed to state a section 1983 claim.

*5.  Failure to State a claim under the Americans with Disabilities Act*

Defendant contends Plaintiff has not stated a plausible claim for relief under the ADA.  ECF No. 24 at 9.  To state a claim of disability discrimination under Title II, a plaintiff must allege four elements: (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of

ORDER - 24

some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002) (per curiam), *cert. denied,* 538 U.S. 921 (2003).

Plaintiff alleges he is an individual with a disability but does not allege that he was excluded or denied benefits or otherwise discriminated against because of his disability. Plaintiff states Ms. Pinkert was aware of Plaintiff's documented disability and used his emotional responses to remove his children from him. ECF No. 1 at 40-44; ECF No. 30 at 5. However, Plaintiff states Ms. Pinkert told him that Plaintiff's "visible outrage" supported her decision to remove the children. ECF No. 1 at 41. There is no evidence that Ms. Pinkert removed Plaintiff's children or engaged in other discriminatory actions *because of* his disability. *See Weinrich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (the exclusion, denial of benefits, or discrimination must be "by reason of" the plaintiff's disability to establish liability under Title II of the ADA). Plaintiff has not stated a plausible claim for relief under the ADA.

ORDER - 25

*6. Failure to Perfect Service*

As the case is dismissed for the reasons discussed *supra,* the Court declines to address Plaintiff's failure to perfect service.

**C. Motion for Electronic Access**

On May 29, 2024, Plaintiff requested electronic filing authorization.  ECF No. 27.  As the Court dismisses the case for the reasons discussed herein, the Court finds Plaintiff's request for electronic access is moot.  Plaintiff's request is therefore denied.

**D. Motion for Leave to Amend Complaint**

The Court does not find good cause to grant plaintiff an opportunity to amend his complaint.  On April 18, 2024, Plaintiff filed a Motion for Leave to Amend Complaint, ECF No. 18, which the Court denied, ECF No. 28.  Plaintiff now files a second Motion for Leave to Amend Complaint, ECF No. 29.

Fed R. Civ. P. 15(a)(1) allows a plaintiff to amend their complaint within 21 days of filing the original complaint.  Rule 15(a)(1)(B) authorizes a party to amend his or her complaint once "as of right," or without Court permission, no later than 21 days after a pleading requiring a response (here a 12(b)(6) motion) is filed.  After the 21-day period, parties may only amend its pleadings with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).

Plaintiff filed his second Motion Seeking Leave to Amend, ECF No. 29, on June 3, 2024. As Defendants' motions to dismiss were filed on April 30, 2024, and May 6, 2024, Plaintiff's motion fell outside of the 21-day period allowed under Fed. R. Civ. P. 15(a)(1)(B). Defendants have not consented to the amendment, thus Plaintiff may only amend with the Court's leave.

The Court has reviewed Plaintiff's proposed amended complaint and finds granting leave to amend would be futile. Plaintiff seeks to add Lake of the Woods County and Garfield County as defendants. ECF No. 29-2. The proposed amended complaint again alleges violations of Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights, and violations of the ADA, and adds a Section 1986 claim. *Id.* at 4. The complaint again focuses on actions that took place in 2004 through 2012. *Id.* at 7-32. Plaintiff contends his ex-wife has been allowed to make false reports against him, and public officials and the GSCO have engaged in abuse of power through 2023. *Id.* Plaintiff offers no further details of specific actions that took place within the statute of limitations. The proposed complaint contains legal conclusions unsupported by any facts to support the legal claims and contains numerous claims Plaintiff has no standing to bring for the reasons discussed *supra.*

Plaintiff's proposed complaint fails to state a Section 1986 claim. Section 1986 imposes liability on persons who know of an impending Section 1985 violation but neglect or refuse to prevent the violation; therefore, a Section 1986

ORDER - 27

claim can only be stated if the complaint contains a valid claim under Section

1985. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir.

1988) (citing *Trerice v. Pedersen,* 769 F.2d 1398, 1403 (9th Cir. 1985). Plaintiff

contends Defendants violated Section 1986 by failing to prevent Section 1983

violations. ECF No. 29-2 at 34-35. Plaintiff does not set forth facts to support a

claim that Defendants conspired to interfere with Plaintiff's civil rights in violation

of Section 1985. *See Karim-Panahi*, 839 F.2d at 626.

The Court finds that allowing amendment would be futile because Plaintiff

could not overcome the statute of limitations and lack of standing by alleging more

facts. Amending to include a Section 1986 claim would also be futile because the

proposed complaint fails to state a Section 1986 claims. For these reasons,

Plaintiff's motion to amend his complaint is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant Ballard's Motion to Dismiss, **ECF No. 22**, is **GRANTED.**

2. Defendant DSHS' Motion to Dismiss, **ECF No. 24**, is **GRANTED.**

3. Plaintiff's Motion for Electronic Access, **ECF No. 27**, is **DENIED.**

4. Plaintiff's Motion for Leave to Amend Complaint, **ECF No. 29,** is

**DENIED.**

5. Plaintiff's Complaint, **ECF No. 1**, is **DISMISSED WITH PREJUDICE.**

ORDER - 28

The District Court Executive is directed to file this Order, enter judgment accordingly, provide copies to counsel and *pro se* Plaintiff, and **CLOSE THE FILE**.

DATED June 10, 2024.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 29